IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN KERSHNER,                              6:12-cv-01945-BR

          Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

          Defendant.


BRUCE W. BREWER
Law Offices of Bruce W. Brewer, PC
P.O. Box 421
West Linn, OR 97068
(360) 688-0458

          Attorneys for Plaintiff

────────────────

        [1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1 - OPINION & ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**DAPHNE BANAY**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

        Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Kevin Kershner seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) payments under Title XVI.

        This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further administrative proceedings.


2 - OPINION & ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed his applications for DIB and SSI on February 10, 2009.  Tr. 17.  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on August 11, 2011.  Tr. 17.  At the hearing Plaintiff was represented by an attorney.  Plaintiff, a medical expert, and a vocational expert (VE) testified at the hearing. Tr. 17.

The ALJ issued a decision on September 23, 2011, in which he found Plaintiff is not entitled to benefits.  Tr. 28.  That decision became the final decision of the Commissioner on August 31, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 5.

## BACKGROUND

Plaintiff was born on February 19, 1978, and was 33 years old at the time of the hearing.  Tr. 359.  Plaintiff received a GED.  Tr. 362.  He has past relevant work experience as a customer-service worker in a call center, a stock worker, and a cleaner.  Tr. 389.

Plaintiff alleges he has been disabled since May 2, 2007, due to bipolar disorder, anxiety, depression, and agoraphobia. Tr. 109.

Except when noted, Plaintiff does not challenge the ALJ's

summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 17-28.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d.

4 - OPINION & ORDER

at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a "mere scintilla" of evidence but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481

F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920.
Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See
also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe
impairment or combination of impairments.  20 C.F.R. §§ 404.1509,
404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d
at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648
F.3d at 724.  The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.

§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule." SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of
a claimant's RFC is at the heart of Steps Four and Five of the
sequential analysis when the ALJ is determining whether a
claimant can still work despite severe medical impairments.  An
improper evaluation of the claimant's ability to perform specific
work-related functions "could make the difference between a
finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th

7 - OPINION & ORDER

Cir. 2010).  The Commissioner may satisfy this burden through the

testimony of a VE or by reference to the Medical-Vocational

Guidelines set forth in the regulations at 20 C.F.R. part 404,

subpart P, appendix 2.  If the Commissioner meets this burden,

the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),

416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged

in substantial gainful activity since May 1, 2007, his alleged

onset date.  Tr. 19.

At Step Two the ALJ found Plaintiff has the severe

impairments of obesity, affective disorder, anxiety disorder, and

a personality disorder.[2]  Tr. 19.

At Step Three the ALJ found Plaintiff's impairments do not

meet or equal the criteria for any impairment in the Listing of

Impairments.  Tr. 20-21.  The ALJ found Plaintiff "has the

residual functional capacity to perform less than a full range of

medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c)"

and, accordingly, "should have only occasional public and

coworker contact and routine supervision; he is limited to

---

[2]  The Court notes the ALJ based his findings as to these
impairments on the medical diagnoses of Plaintiff in the record
as opposed to the impairments listed in his applications.  *See*
Tr. 19, 109.

simple, routine tasks; and he should avoid public trans-
portation." Tr. 21.

At Step Five the ALJ found Plaintiff could perform his past
relevant work as a cleaner. Tr. 26. Accordingly, the ALJ found
Plaintiff is not disabled. Tr. 35.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly
rejected the opinion of treating psychologist Alice Moody,
Psy.D., and (2) improperly discredited Plaintiff's testimony.

## I. Medical opinion testimony of Dr. Moody

Plaintiff contends the ALJ erred when he did not give clear
and convincing reasons for rejecting the opinion of Dr. Moody,
Plaintiff's treating psychologist.

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record." *Thomas v.
Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v.
Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical
opinion of an examining or treating physician is uncontroverted,
however, the ALJ must give "clear and convincing reasons" for
rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v.*

*Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally the more consistent an opinion is with the record as a whole, the more weight an opinion should be given.  20 C.F.R. § 416.927(c)(4).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

Dr. Moody had a series of eighteen sessions with Plaintiff between September 2, 2009, and April 28, 2010.  Tr. 260.  She gave him an Axis I diagnosis of "Bipolar II Disorder," an Axis II diagnosis of major depression, and a GAF[3] of "40/70."  Tr. 260.

On September 17, 2009, Dr. Moody filled out a Metropolitan Life Insurance Company (MetLife) "Attending Physician Statement."

---

[3]  A Global Assessment of Functioning (GAF) score rates a person's psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness.  *See* Diagnostic and Statistical Manual (DSM-1V) at 34.

Tr. 272-74.  In her statement she noted Plaintiff has problems
with anger, sleeping too much, concentration, memory, lack of
energy, depression, social isolation, apathy, fearfulness, panic,
suicidal ideation, and hopeless feelings.  Tr. 272.  Dr. Moody
opined Plaintiff is limited in his ability to engage in
interpersonal relations or even limited stress situations.
Dr. Moody commented "any stressful situations pose a roadblock to
living a normal life and maintaining relationships."  Tr. 273.
She also noted "any and all" stress factors or problems with
interpersonal skills affect Plaintiff's ability to perform the
duties of his job.  Tr. 273.  Dr. Moody stated she advised
Plaintiff that he should not return to work until he is stable.
Tr. 273.  Dr. Moody also filled out a MetLife "Supplemental
Functional Health Assessment Form" in which she opined Plaintiff
was severely limited in his ability to maintain safety of self
and others, to maintain appropriate control of emotions, and to
interact with customers.  Tr. 268.

    In an April 7, 2010, letter, Dr. Moody wrote:  Plaintiff's
"mood disorder is so severe that he is unable to progress at this
time."  Tr. 262.  Dr. Moody opined Plaintiff's "condition is no
better as far as being able to function at a job between the
periods of 12-01-08 through 09-16-09, and at the present."
Tr. 262.  Dr. Moody noted "part of the problem has been in
locating a medication provider" for Plaintiff in light of the

11- OPINION & ORDER

fact that  "psychiatric providers are few and rarely taking new
clients."  Tr. 262.  Dr. Moody concluded:  "My professional
opinion is that [Plaintiff] quite easily qualifies for
disability.  Of all the clients I have seen who have been
approved for disability, [Plaintiff] is the most deserving, in my
opinion."  Tr. 262.  The ALJ considered Dr. Moody's opinion as
treating psychologist, but the ALJ gave it less weight than the
opinions of Margaret Moore, Ph.D., the testifying medical expert,
and examining psychologist, Shawn A. Johnston, Ph.D.

     At the hearing Dr. Moore opined Plaintiff has an affective
mood disorder and anxiety disorder that meet or equal a listing,
and Plaintiff could likely work in jobs that involved occasional
public and coworker contact.  Tr. 24.  Dr. Johnston performed a
neuropsychological screening examination of Plaintiff in August
2011 and concluded the results were not consistent with a
diagnosis of bipolar disorder, Plaintiff's symptoms are better
explained by "characterological" rather than emotional problems,
and Plaintiff does not have an anxiety disorder.  Tr. 24.
Dr. Johnston also concluded Plaintiff is able to perform his past
relevant work.  Tr. 25.  The ALJ gave greater weight to the
opinions of Drs. Moore and Johnston "because [Dr. Moore] had
the benefit of reviewing claimant's medical records and
[Dr. Johnston] had the opportunity to review the record in its
entirety and evaluate claimant and administer intellectual

testing." Tr. 26.  The ALJ, however, did not indicate the extent
to which Plaintiff's medical records contradict Dr. Moody's
opinion and/or lead to a conclusion that the opinions of
Drs. Johnston and Moore should be weighed more heavily.  In fact,
the Court notes the medical records appear to be more consistent
with Dr. Moody's opinion.  For example, in April 2007 Timothy
Gray, D.O., diagnosed Plaintiff with anxiety and depression and
refilled his prescription for Lexapro.  Tr. 169.  In May 2008
Benjamina Brown, M.D., concluded Plaintiff had continuing
episodic mood disorders and reported Plaintiff "primarily
exhibits an anxiety disorder" and has some characteristics of
depression and bipolar disorder.  Tr. 188.

      Is also unclear how the testing performed by Dr. Johnston
contradicts Dr. Moody's opinion as to Plaintiff's psychological
limitations.  As Plaintiff points out, he is claiming to be
disabled based on his mental impairments that include depression,
anxiety, and a mood disorder and not because of low intellectual
functioning.  Furthermore, although the results of Dr. Johnston's
intelligence testing indicated Plaintiff was above average,
Dr. Johnston noted the results of the Beck Depression Inventory
indicated Plaintiff reported a severe level of depressive
symptoms and the Beck Anxiety Inventory indicated Plaintiff is
severely anxious.  Tr. 291.  These test results appear to support
Dr. Moody's opinion rather than contradict it.

13- OPINION & ORDER

The ALJ also gave less weight to Dr. Moody's opinion because Dr. Moody reported she had only eight appointments with Plaintiff as of February 2010 and some of them were over the telephone. Tr. 26.  The Court notes, however, Dr. Moody noted in April 2010 that she had seen Plaintiff a total of eighteen times.  Tr.  260. In contrast, Dr. Johnston met with Plaintiff once for four hours and Dr. Moore never met with Plaintiff.  Tr. 290, 380.  Thus, the ALJ failed to explain why Dr. Moody's relationship with Plaintiff, which spanned seven months and consisted of eighteen appointments, was a basis for giving her opinion less weight than the opinion of Dr. Johnston who only saw Plaintiff for a single, four-hour session or the opinion of Dr. Moore who never met with Plaintiff.

Finally, the ALJ discounted Dr. Moody's opinion because it appeared to be "based upon his [*sic*] subjective reporting of symptoms, which were not supported by testing at the psychological consultive examination in 2011." Tr. 26.  In light of the fact that at least some of Dr. Johnston's tests appear to support  Dr. Moody's opinion, the Court concludes it is unclear on
this record which tests the ALJ found to be contradictory to Dr. Moody's opinion.

The Court concludes on this record that the ALJ erred when he rejected Dr. Moody's opinion because the ALJ did not provide

14- OPINION & ORDER

legally sufficient reasons supported by the record for doing so.

## II. Plaintiff's Testimony

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's testimony as to his mental impairments.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra,* 481 F.3d at 750 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified he is physically able to

15- OPINION & ORDER

shower, cook, shop, do dishes, do laundry, vacuum, and clean the
house even though the tasks are mentally difficult for him to
perform.  Tr. 374.  Accordingly, he only showers a few times a
month and his house is a mess.  Tr. 374.  Plaintiff also
testified he is able to leave the house only three to four times
per month and "doesn't want to face anyone."  Tr. 378.  Plaintiff
stated most of the jobs he has held have ended because he called
in sick for too many days.  Tr. 379.  Plaintiff also testified
medication helps with his depression, but its side effects make
it difficult for him to function.  Tr. 366.  In a September 20,
2009, Disability Report Appeal, Plaintiff reported his condition
prevents him, in part, from holding a job because he has
emotional outbursts, he is unable to respond rationally when he
is with other people, and he experiences extreme anxiety.  Tr.
149.  Plaintiff also stated he has taken his anger out on his
wife.  Tr 380.

     The ALJ concluded Plaintiff's medically determinable
impairments could reasonably be expected to cause some of
Plaintiff's alleged symptoms, but the ALJ concluded Plaintiff's
"allegations of disability are not fully credible."  Tr. 22.  The
ALJ relied primarily on Dr. Johnston's neuropsychological
examination in 2011 to discredit Plaintiff's testimony.  For
example, the ALJ noted despite Plaintiff's allegations of
depression and memory problems, Dr. Johnston opined the results

16- OPINION & ORDER

of Plaintiff's cognitive skill and memory testing was "'contra-indicative of any cognitive problem [*sic*] usually associated with emotional disorders' such as problems with attention, concentration or memory." Tr. 23. The ALJ did not, however, explain how the intelligence testing discredited Plaintiff's allegations as to the limiting effects of depression. As noted, the ALJ improperly discredited Dr. Moody's opinions and observations, which appear to support Plaintiff's testimony.

The ALJ also discredited Plaintiff's testimony based on the August 2010 notes of Benjamina Brown, M.D., in which she stated Plaintiff was following a "regimen" prescribed by a nurse practitioner and his neurological exam was normal. Tr. 23, 280. The Court notes, however, Dr. Brown also noted although the regimen Plaintiff was following appeared to be helping, Plaintiff's mood seems to cycle down every three months or so. Tr. 280. Dr. Brown, however, does not appear to be a mental-health expert, and the ALJ did not offer an explanation as to why Dr. Brown's examination notes should be given greater weight than the opinion of Dr. Moody, Plaintiff's treating psychologist.

The ALJ also discredited Plaintiff's testimony because "there is no evidence that his impairments cannot be controlled or remedies without medication and appropriate treatment." Tr. 23. As noted, Plaintiff testified even though medication helps, the side effects make him unable to function. Tr. 366.

17- OPINION & ORDER

In July 2011 Plaintiff also reported to examining physician John H. Ellison, M.D., that he stopped taking Lamictal and Citalopram because they made him "zombie-like."  Tr. 340.  In 2011 he also reported to Dr. Johnston that he discontinued using Lexapro and another medication because they stopped being effective after a while.  Tr. 288.  Although the record reflects Plaintiff at times has reported an improvement in his symptoms while taking medication, none of Plaintiff's treating physicians contradict Plaintiff's testimony as to the overall effects of the medication and none opined Plaintiff is capable of performing his RFC even with medication.

The Court concludes on this record that the ALJ erred when he discredited Plaintiff's testimony with respect to his mental impairments because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *See, e.g., Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012).  The court may "direct an award of benefits where the record has been fully

developed and where further administrative proceedings would
serve no useful purpose." *Id.* (quoting *Smolen v. Chater*, 80 F.3d
1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for
determining when evidence should be credited and an immediate
award of benefits directed. *Strauss v. Comm'r of Soc. Sec.
Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).  The court should
grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *See, e.g.*,
*Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

On this record the Court concludes further proceedings are
necessary because it is not clear whether the ALJ would have
found Plaintiff can perform his past relevant work as a cleaner
or other work that exists in significant numbers in the national
economy if the ALJ had properly considered the opinion of
Dr. Moody and Plaintiff's testimony as to the limiting effects of
Plaintiff's mental impairments.

Based on the foregoing, the Court concludes a remand for

19- OPINION & ORDER

further proceedings consistent with this Opinion and Order is required to permit the ALJ (1) to determine whether Plaintiff is limited by his mental impairments (2) to consider whether any new findings made by the ALJ alters his evaluation of Plaintiff's RFC and affects his decision as to whether Plaintiff can return to his past relevant work or is capable of performing other work that exists in significant numbers in the national economy.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 17th day of January, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge